UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELSEY SEAY,

            **Plaintiff,**                   **CIVIL ACTION NO. 11-12252**

     **vs.**                      **DISTRICT JUDGE VICTORIA A. ROBERTS**

**COMMISSIONER OF**           **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

            **Defendant.**
_____/

## REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**  This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 9) be denied, Defendant's Motion for Summary Judgment (docket no. 15) be granted, and Plaintiff's complaint be dismissed.

**II.**    **PROCEDURAL BACKGROUND**

On August 7, 2006 Plaintiff protectively filed applications for a period of disability, disability insurance benefits, and supplemental security income alleging disability beginning August 4, 2006. (TR 159-67). The applications were denied and Plaintiff filed a timely request for a *de novo* hearing. On February 4, 2009 Plaintiff appeared with counsel in Flint, Michigan and testified at a video hearing held by Administrative Law Judge (ALJ) Troy M. Patterson, who presided over the hearing from Falls Church, Virginia. (TR 63-73). Vocational Expert (VE) Judith K. Findora also appeared and testified at the hearing. In a June 23, 2009 decision the ALJ found that while Plaintiff had not engaged in substantial gainful employment since August 4, 2006, and suffered from the severe impairments of left arm injury, bilateral arm and back pain, and anxiety, he did not have an

1

impairment or combination of impairments that met or medically equaled one of the listed impairments. The ALJ determined that Plaintiff had the residual functional capacity to perform light work except for the loss of use of his non-dominant arm. He concluded that Plaintiff was not under a disability as defined under the Social Security Act, because although he could not perform past relevant work he could perform jobs that exist in significant numbers in the national economy.

The Appeals Council granted Plaintiff's request for review and in a September 25, 2009 order vacated the ALJ's decision and remanded the case for resolution of whether and to what extent Plaintiff's moderate impairments in social functioning and concentration, persistence, or pace impacted his ability to perform the mental demands of work. (TR 79). On December 8, 2009 Plaintiff appeared with counsel in Flint, Michigan and testified at a supplemental video hearing held before ALJ Troy M. Patterson, who again presided over the hearing from Falls Church, Virginia. (TR 22-32). VE Ann Tremblay also appeared and testified at the hearing. During the hearing, Plaintiff amended his disability onset date to June 13, 2007. (TR 26). In a February 25, 2010 decision, the ALJ found that Plaintiff was not entitled to disability benefits because there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (TR 8-18). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. The parties filed cross Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III.   PLAINTIFF'S TESTIMONY AND RECORD EVIDENCE

### A.   Plaintiff's Testimony

Plaintiff was thirty-eight years old on his amended disability onset date. (TR 159). He

completed the twelfth grade and had past relevant employment detailing cars at an auto dealership. (TR 37, 39). Plaintiff testified that he lives at home with his mother. He claimed that his mother and brother do all of the household chores. (TR 39-40). He testified that he injured his left arm in a work-related incident at the age of eighteen. Plaintiff stated that he has pain in his left and right arms, back pain, anxiety, depression, and difficulty concentrating. (TR 39, 42-43, 45). He claimed that he saw a psychiatrist only one time and has received no other mental health treatment. Plaintiff stated that he takes Zoloft, Paxil, and Tylenol 3. (TR 28-29, 42). He testified that he spends his days watching television and he attends church several time a month. (TR 39-40). Plaintiff was driven to the hearing by a friend. He testified that he drives to the store but he will not drive long distances.

**B.      Medical Evidence**

On May 17, 2003 Plaintiff was admitted to Hurley Hospital via the Emergency Room for complaints of chest pain. (TR 228). The Emergency Room (ER) note reports that Plaintiff has a history of daily marijuana and alcohol abuse. (TR 228). The ER note states that Plaintiff had a normal examination and chest x-ray. (TR 228). Plaintiff was diagnosed on discharge with chest pain, cardiac arrhythmia, panic attack, and cannabis abuse.

On August 9, 2006 Plaintiff presented to Genesee Urgent Care with complaints of pain in his left arm. (TR 242). The medical note states that Plaintiff reported constant pain in his arm, with a pain level of five on a scale of one to ten. He was given a prescription of Darvocet and instructed to rest from work for five days and follow up with his primary care physician. On August 28, 2006 Plaintiff presented to the Hurley Medical Center Triage with complaints of left arm pain rated an eight on a ten-point scale. (TR 265).

On May 1, 2007 Dr. S. Nagarkar completed a psychiatric evaluation of Plaintiff related to Plaintiff's complaints of anxiety.  (TR 267).  Dr. Nagarkar reported that Plaintiff described having anxiety attacks that come on suddenly three to four times a week and last approximately thirty-five to sixty minutes each episode.  (TR 267).  Plaintiff reported that during the episodes he becomes extremely apprehensive, with smothering sensations, sweating, tremors, palpitations, and butterflies in the stomach.  Dr. Nagarkar documented that Plaintiff denied having problems with concentration and memory, stated that he had never seen a psychiatrist, and claimed that he went to Hurley Hospital for a complete physical and was told there was nothing wrong with him.  On examination, Dr. Nagarkar observed that Plaintiff was alert and oriented to all spheres, pleasant, with fair insight and judgment, and no formal thought disorder.  He diagnosed Plaintiff with panic disorder with agoraphobia, prescribed Zoloft, and recommended that Plaintiff go to the Genesee Community Mental Health Center for follow up.

Almost two years later, on February 5, 2009, Dr. Nagarkar completed a Mental Medical Source Statement for the Social Security Administration in which he checked boxes indicating that Plaintiff was mildly limited in his ability to handle funds; moderately limited in his ability to understand, remember and carry out simple one-or-two step job instructions; and markedly limited in the following areas: (1) ability to relate and interact with supervisors and co-workers; (2) ability to understand, remember, and carry out an extensive variety of technical and/or complex job instructions; (3) ability to deal with the public; (4) ability to maintain concentration and attention for at least two hour increments; and (5) ability to withstand the stress and pressures associated with an eight-hour work day and day-to-day work activity.  Dr. Nagarkar provided no explanation for his findings other than to indicate that he had only seen Plaintiff once in 2007.  (TR 268).

4

In March, June, and October 2007, Dr. Gavin Awerbuch performed neurological examinations on Plaintiff. (TR 260-62, 276). Dr. Awerbuch reported that Plaintiff had severe, constant pain in his left arm with loss of function and pain radiating into his left shoulder, a history of seven surgeries on his left hand, chronic right shoulder pain due to overuse of his right arm, and sensitivity to changes in the environment. Dr. Awerbuch noted that Plaintiff had become despondent and depressed because of his pain and nervous to the point of shaking around people. (TR 261). On examination, Dr. Awerbach observed that Plaintiff's left arm and hand showed multiple scars of skin grafts; hypersensitivity and allodynia with pain even on light touch; difficulty gripping and holding objects; poor fine finger coordination; left shoulder reduced range of motion; some reduced motion of his right shoulder; and crepitations in both shoulders with positive impingement signs but no shoulder weakness. (TR 261). Dr. Awerbuch opined that Plaintiff's pain at times made it difficult for him to wear his shirt. He also observed that Plaintiff could elevate his left shoulder to ninety degrees and his right shoulder to one hundred and ten degrees.

On neurological examination Dr. Awerbuch noted that Plaintiff was awake and alert, with normal thought processes, hypoalgesia and hypersensitivity in the left hand, sensory loss over the right thumb and first two fingers, with positive Tinel's at the right wrist. (TR 261). He diagnosed Plaintiff with severe depression, social anxiety, post traumatic stress disorder, and right carpal tunnel syndrome, and concluded that Plaintiff was unable to work in any capacity due to his neurological, orthopedic, and psychiatric problems. (TR 260, 262).

On February 9, 2009 Dr. Awerbuch completed a Physical Medical Source Statement for the Social Security Administration. (TR 269). Dr. Awerbuch noted that Plaintiff had left arm injury, bilateral rotator cuff injury, depression, social anxiety, and post traumatic stress disorder. (TR 269).

5

He checked boxes indicating that Plaintiff could lift and carry less than ten pounds occasionally and frequently, stand or walk two hours in an eight-hour day, and alternate between sitting and standing. Dr. Awerbuch opined that Plaintiff should avoid working above shoulder level, and should avoid power tools, temperature changes, stress, and interaction with others. (TR 269). He concluded that Plaintiff's limitations would disrupt a regular job approximately 40 hours out of a 160 hour month.

On September 15, 2009 Dr. Linda Brundage, a state agency examiner specializing in psychological issues, completed a Psychiatric Review Technique in which she determined that Plaintiff had mild restrictions in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, with no episodes of decompensation. (TR 245-59). Dr. Brundage concluded that Plaintiff's anxiety-related disorder of panic attacks and substance addiction disorder were not severe. (TR 246, 251).

## IV.    VOCATIONAL EXPERT TESTIMONY

The VE testified at the first hearing that Plaintiff's past work in auto detailing was medium unskilled labor and testified at the supplemental hearing that the auto detailing work was light unskilled work. (TR 29, 46). During the original hearing, the ALJ asked the VE to consider an individual with the same age, education, and work experience as Plaintiff who could perform work at the light exertional level, but who could use his left upper extremity only as an assistive device or in an assistive manner, to exclude using his left upper extremity primarily for lifting, bearing, grasping, or handling. (TR 29-30). The VE testified that the individual could not perform Plaintiff's past relevant work, but could perform other light unskilled work that exists in the national economy, including work as an information clerk, courier, and inspector, comprising 324,000 jobs. (TR 30). The VE testified that if the hypothetical individual was unable to engage in sustained work activity

for a full eight-hour day on a regular and consistent basis because of pain and other symptomalogy, the individual would be unable to perform any job in the national economy. (TR 31).

At the supplemental hearing, the ALJ asked the VE to consider an individual with the same age, education, and work experience as Plaintiff, who was capable of performing light work but who could not use his left arm for vocational purposes; who could use his right arm only for occasional handling, lifting, and grasping; and who would be limited to jobs that involved only superficial interpersonal contact with coworkers, supervisors, and the public. (TR 47). The VE testified that not only could the hypothetical individual not perform the past relevant work under this RFC but he could not perform any work in the national economy. (TR 47).

## V.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

Following the supplemental hearing, the ALJ found that although Plaintiff had not engaged in substantial gainful activity since August 4, 2006, and suffered from the severe impairments of a left arm injury and bilateral arm and back pain, he did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (TR 8-14). The ALJ determined that Plaintiff retained the RFC to perform light work with the exception that he was unable to use his left upper extremity except in an assistive manner. He concluded that Plaintiff was unable to perform his past relevant work, but he remained capable of performing jobs that existed in significant numbers in the national economy. (TR 14-18). Consequently, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act from August 4, 2006 through February 25, 2010, the date of the ALJ's decision.

## VI.   LAW AND ANALYSIS

## A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not presently engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not,

8

he would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

**C.    Analysis**

Plaintiff argues that the ALJ failed to give sufficient weight to Dr. Awerbuch and Dr. Nagarkar's treating opinions, and thereby formed an inaccurate hypothetical that did not accurately portray his impairments.  It is well-settled that the opinions of treating physicians are generally accorded substantial deference.  In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  A treating source opinion will not be accorded deference if it addresses a subject reserved to the Commissioner, such as an opinion on a claimant's disability under the Listing, on residual functional capacity, on the application of vocational factors, or an opinion offering a general and conclusory statement of disability or inability to work. 20 C.F.R. §§ 404.1527(e), 416.927(e).  The longer the treating source relationship, the more medical signs and laboratory findings the treating source uses to support his opinion, and the more expertise a doctor has in the area of impairment, the greater weight the opinion will be accorded.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

9

In the present case the ALJ considered the record in its entirety, discussed the medical evidence pertaining to Plaintiff's mental and physical impairments, and concluded that Dr. Awerbuch's assessment that Plaintiff was severely restricted in his ability to perform basic work activities was entitled to little weight.  (TR 12, 16).  The ALJ recognized Dr. Awerbuch's treating relationship, but concluded that the doctor's limited interaction with Plaintiff, consisting of only three evaluations, hindered his ability to develop the type of detailed, longitudinal understanding of Plaintiff's medical impairments that was contemplated under 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  The ALJ addressed Dr. Awerbuch's diagnoses of severe depression, social anxiety, and post traumatic stress disorder and observed that not only were these diagnoses outside of Dr. Awerbuch's primary area of expertise, but they were not supported by documented mental health related symptoms recorded in Dr. Awerbuch's corresponding treatment notes.  (TR 11-12).  The ALJ noted that there was little evidence of psychiatric treatment documented in the medical record, and no record of any treatment notes that referred to a mental health impairment after October 2007.  Indeed, by his own admission, Plaintiff saw a psychiatrist on only one occasion, treated his depression only with over-the-counter medication, and did not receive other mental health treatment even though he was referred to a community mental health program to accommodate the fact that he did not have insurance.  (TR 28-29).

The ALJ noted that the medical record contains evidence of a May 2007 psychiatric evaluation in which Plaintiff was described as alert and oriented, pleasant, with fair insight and judgment, only a mildly constricted affect, and no observed thought disorders or psychotic symptoms. He noted a second psychological evaluation that found that Plaintiff was only mildly restricted in his activities of daily living, social functioning, and maintaining concentration,

10

persistence, or pace, and remained capable of doing unskilled work.  The ALJ then cited specific examples from the record to support the conclusion that Plaintiff was only mildly limited in activities of daily living, social functioning, and concentration, persistence, or pace, with no episodes of decompensation.  (TR 13-14).

As for Plaintiff's physical symptoms, the ALJ discussed Plaintiff's loss of function, pain, and reduced range of motion of the left arm and shoulder.  He then observed that Plaintiff sought only infrequent treatment for his physical condition, and discussed medical evidence showing that Plaintiff was neurologically normal.  The record does not show that Plaintiff was advised to undergo x-rays and other testing, surgery, physical therapy, or anything other than conservative treatment for his physical impairments.  The medical evidence of record also reveals an absence of objective medical evidence to document debilitating symptoms attributed to Plaintiff's right shoulder and back impairments.  The ALJ determined that he was not bound by Dr. Awerbuch's statements on Plaintiff's inability to work and on the ultimate issue of disability.  He also found that Dr. Awerbuch's statements that Plaintiff was extremely limited in his functional abilities and retained the ability only to do a limited range of sedentary work were not consistent with the other substantial evidence in the record.

The ALJ made similar findings as to Dr. Nagarkar's opinion, noting that Dr. Nagarkar evaluated Plaintiff psychiatrically on only one occasion, only prescribed Zoloft, and recommended follow up treatment.  Dr. Nagarkar noted that Plaintiff denied having problems with concentration and memory, and observed that Plaintiff was alert and oriented, pleasant, with fair insight and judgment, and no observable formal thought disorder.  The ALJ noted that Dr. Nagarkar's Mental Medical Source Statement, completed over one and a half years after his evaluation of Plaintiff, was

11

not consistent with the medical record and was entitled to little weight.

The undersigned concludes that the ALJ's RFC limiting Plaintiff to light work with the exception that he is unable to use his left upper extremity in any capacity other than as an assistive device was based on substantial evidence and addressed restrictions the ALJ found to be credible.

The ALJ gave good reasons for attributing little weight to the medical opinions of Dr. Awerbuch and Dr. Nagarkar.  He crafted an RFC determination that took into account those limitations he found credible, and posed accurate hypotheticals to the VE.  The VE testified that there were a significant number of jobs existing for an individual with Plaintiff's RFC.  The ALJ's decision is supported by substantial evidence and should not be disturbed.  The Court therefore recommends that Defendant's Motion for Summary Judgment be granted, Plaintiff's Motion for Summary Judgment be denied, and this case be dismissed.

**REVIEW OF REPORT AND RECOMMENDATION**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection

12

must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: August 6, 2012          s/ Mona K. Majzoub                                    
                               MONA K. MAJZOUB
                               UNITED STATES MAGISTRATE JUDGE



### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: August 6, 2012          s/ Lisa C. Bartlett            
                               Case Manager


13